(No. 13039.—Reversed in part and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HARVEY MARQUIS *et al.* Plaintiffs in Error.

*Opinion filed December 17, 1919—Rehearing denied Feb. 5, 1920.*

1. CONSTITUTIONAL LAW—*Search and Seizure act not invalid as giving preference to religious denominations.* The Search and Seizure act of 1919, (Laws of 1919, p. 930,) by exempting from the prohibition of the act intoxicating liquors used for sacramental purposes, does not violate section 3 of article 2 of the constitution, which prohibits the giving of any preference to any religious denomination or mode of worship.

2. SAME—*due process of law requires notice.* Due process of law in the regular course of judicial proceedings requires notice to the defendant as a matter of right before his property can be condemned, and a law which purports to authorize condemnation without notice confers no authority and is no justification for judgment against him, even though he had knowledge of the proceedings.

3. SAME—*when judgment in a summary hearing is not binding.* A summary hearing of which no notice is required to be given to a person whose rights are affected, and a judgment upon such hearing, do not constitute due process of law, and the judgment is not binding on the person against whom it is rendered and confers no rights against him or his property.

4. SAME—*when property may be destroyed without a judicial proceeding.* The right of executive officers to destroy property without a judicial proceeding is limited to nuisances *per se,* or to cases of imminent danger to the public health or safety, or to articles dangerous to public welfare the possession of which is prohibited by law; and the destruction must be limited to the necessity of each case, without wanton or unnecessary destruction.

5. SAME—*provision of Search and Seizure act for destruction of property is invalid.* The provision of the Search and Seizure act authorizing the destruction, by order of the court, of intoxicating liquor and the vehicles used in transporting the same over the public highways, is unconstitutional because the act does not require notice to the owner of such property but only to the person in whose possession it is found; and the fact that the owners are actually given notice and appear and present their claims does not affect the constitutionality of such provision.

FARMER and DUNCAN, JJ., dissenting.

Writ of Error to the County Court of McHenry county; the Hon. C. P. Barnes, Judge, presiding.

George Remus, and E. V. Orvis, for plaintiffs in error.

Edward J. Brundage, Attorney General, Vincent S. Lumley, State's Attorney, C. W. Middlekauff, George C. Dixon, and Charles T. Allen, for the People.

Mr. Chief Justice Dunn delivered the opinion of the court:

Harvey Marquis left Kenosha, Wisconsin, in the afternoon of August 26, 1919, for Chicago, driving an auto truck loaded with eleven barrels of bottled beer. He was advised not to go through Lake county for fear of being arrested but to go through McHenry county and it would be all right. Accordingly he chose a road through McHenry county, and while in that county after dark, having no lights, he drove off the road into a farmyard 100 or 200 feet from the road, stopped and went to sleep on the truck. Soon after he was awakened by a deputy sheriff, arrested and taken to Woodstock, the county seat, and placed in jail, the deputy sheriff putting the truck and its load under the care of a guard, who watched them until they were taken possession of by the sheriff. The next day the State's attorney filed an information in the county court against Marquis for violating the Search and Seizure act. On September 5 an amended information was filed charging the defendant with the transportation of intoxicating liquor over public highways, contrary to law, and after a trial, upon his plea of not guilty, he was convicted and sentenced to pay a fine of $50 and costs. On August 27, 1919, the State's attorney filed his complaint under oath, stating that he had reasonable cause to believe that intoxicating liquor was being transported in prohibition territory in a certain auto truck by H. Marquis and others named,

and praying for a search warrant. The county judge issued a search warrant bearing the date of the previous day. The warrant was returned by the sheriff showing that he had seized eight and one-half barrels of bottles containing beer and one Diamond-T truck bearing Illinois license number 358408, and that he had arrested and held in custody H. Marquis, the driver of the truck on which the intoxicating liquor was being transported. September 5 an amended complaint was filed, which differed from the other only in stating that the intoxicating liquor was being unlawfully transported, and that the auto truck was in the town of Burton, in McHenry county, instead of in McHenry county. What is called an amended search warrant was issued conforming to the amended complaints. On the same day Bertha Siemon and the Siebold-Schaeffer Company, each claiming to be the owner of the auto truck, filed petitions praying for the delivery of the auto truck to the respective petitioners, and Robert A. Grace, claiming to be the owner of the beer, prayed for its delivery to him. The petitions were summarily heard by the court, which found that the truck was being used as a vehicle to transport illegally over the public highways in prohibition territory, beer containing more than one-half of one per cent, by volume, of alcohol; that the barrels containing the beer were not labeled or marked on the outside cover so as to plainly show the true name and address of the consignor and consignee, or the kind and quantity of liquor contained, or the purpose for which said liquor was to be used by the consignee, or the place where such liquor was to be used by the consignee; that the beer, at the time of its seizure, was in the truck and was being illegally transported over the highways of McHenry county in prohibition territory, contrary to the provisions of the Search and Seizure law of the State, and said beer and truck were at the time in the possession of Harvey Marquis, the defendant, who was then driving the truck. The judgment of the court was that the auto

truck and the beer be adjudged forfeited in accordance with
the provisions of the Search and Seizure law, and it was
ordered that the sheriff proceed forthwith to destroy them
by taking them to a suitable place within two miles of the
court house, thoroughly saturating them with oil of a highly
inflammable character, and publicly burning and destroying
them between the hours of ten o'clock in the morning and
three o'clock in the afternoon, within five days of the date
of the judgment. The defendant, Marquis, and the peti-
tioners have sued out a writ of error to reverse the judg-
ment of the county court.

It is contended that the evidence was insufficient to
prove Marquis guilty beyond a reasonable doubt, because
he had no knowledge of the contents of the barrels other
than that indicated by the labels, which stated that the con-
tents were non-intoxicating. He had driven the truck from
Chicago to Kenosha with a load of store fixtures and house-
hold furniture, with directions from his employer to try to
get a return load. While he was trying to get a load to
haul back to Chicago he met Grace about two blocks from
the Blatz brewery, who wanted him to take a load of bar-
rels, which were labeled non-intoxicating, to Chicago. The
barrels were labeled, "Blatz private stock; non-intoxicat-
ing." Grace had the truck taken to the brewery and loaded
and brought back to Marquis. The barrels were not con-
signed to anyone. There was no agreement about the price
for their transportation. Marquis was to take them to the
office of his employer in Chicago and Grace was to call at
the office and tell where they were to be taken. Marquis
was told not to go through Lake county on account of the
Zion City authorities but to go around through McHenry.
The weight of the evidence is a question for the jury, and
it is not surprising that they should have believed that the
defendant was seeking to evade the law.

Various objections are urged against the constitution-
ality of the Search and Seizure act, on which the prosecu-

tion is based. (Laws of 1919, p. 930.) It is argued with apparent earnestness that the statute violates that part of section 3 of article 2 of the constitution which prohibits the giving of any preference to any religious denomination or mode of worship because its prohibition does not extend to intoxicating liquors for sacramental purposes. It is said that some religious organizations use wine for such purposes and others do not, and that therefore the act gives a preference to those using wine and grants them a special privilege or immunity. The same argument would apply to the intoxicating liquor used for medicinal, chemical, mechanical and manufacturing purposes, all of which are recognized as legitimate uses of intoxicating liquors. These, as well as sacramental uses, are expressly exempted from the prohibition of the act in question and are left to be controlled by such other restrictions and regulations as are or may be provided by the laws of the State or the United States. The manufacture, transportation and sale of intoxicating liquor for sacramental purposes are in no way interfered with by the act but are free to all persons and all religious denominations to the same extent as before the passage of the act. The right to use intoxicating liquors for such purposes exists in all. It is not a special privilege in those exercising the right because others who also have the right do not exercise it.

The most serious objection to the judgment questions the court's authority to order the destruction of the property. Marquis, who was transporting the beer, was not the owner of either the truck or the beer. He was a driver in the employ of the owner of the truck, the Siebold-Schaeffer Company, a corporation engaged in the business of teaming and hauling. There is no evidence that the corporation had any notice of the character of the load which Marquis was hauling and which he had procured independently in Kenosha, or that it was a participant in the violation of the law. Bertha Siemon was the owner of a chat-

tel mortgage for $600 on the truck. It was not legally acknowledged and had not been recorded, but the evidence shows that it was given for a valid debt and that it was valid between the parties. She was not shown to have had any knowledge of the unlawful use of the automobile. Grace, the other plaintiff in error, was the owner of the beer. He caused it to be loaded and shipped to Chicago. Under the Search and Seizure act all territory in Illinois was prohibition territory by virtue of the act of Congress called the War Prohibition law. No question was made about the operation of this law, and the transportation of the beer upon any highway in Illinois to Chicago was a violation of the Search and Seizure act, in which Grace participated.

Under section 16 of the Search and Seizure act all intoxicating liquor manufactured, kept for sale, used, disposed of or transported within prohibition territory in violation of any law of this State, with all vessels containing the same, and all implements, furniture and vehicles kept or used for any such purposes, are declared to be common nuisances and subject to seizure, confiscation and destruction in the manner provided by the act. This section and section 17 provide for the issuing of a search warrant upon complaint in writing verified by affidavit, and for its execution by the search of the place described in the warrant and the seizure of all intoxicating liquor there found, all vessels containing the same, and all implements, furniture and vehicles kept or used for the purpose of violating or with which to violate any law of the State. The warrant further requires the arrest of any and all persons in whose possession the articles seized are found, and the bringing of them, together with the articles seized, before the officer issuing the warrant or some other judge or justice of the peace having cognizance of the case. Section 17 provides that any claimant shall be entitled to have his right of property in such liquor and other property tried in a summary manner before

the judge to whom the search warrant may have been returned but does not require any notice to be given. Section 18 provides that no intoxicating liquor or other property seized under the act shall be taken from the custody of the officer by writ of replevin or other process while any proceeding provided for in the act is pending, and that a final judgment of forfeiture of such intoxicating liquor or property shall be a bar to all suits for the recovery of the same or the value thereof, or for any damages arising by reason of the seizing or detention thereof. Section 19 requires the officer serving the search warrant to make and file an information against any person arrested, charging the violation of any of the provisions of any statute or municipal ordinance which may appear to have been committed by such person, and provides that the trial shall take place as speedily as possible and shall have preference over other cases. As soon as such complaint is disposed of, if it shall appear that the intoxicating liquor was manufactured, kept for sale, used, disposed of or transported in violation of any of the provisions of any statute or municipal ordinance, the same, with the vessels, implements, furniture and vehicles seized therewith, shall be adjudged forfeited and ordered forthwith destroyed in the manner the court may direct.

The act contains no provision for giving notice to any person except the person in whose possession the intoxicating liquor and vessels containing it, and all implements, furniture and vehicles kept or used for the purpose of violating or with which to violate any law of this State, are found. Upon conviction of the person in possession it requires all such intoxicating liquor and other property to be forthwith destroyed. If the defendant is not the owner of the property seized, no provision is made for notice to the owner or any person interested other than the defendant, but the property seized may be adjudged forfeited and ordered destroyed forthwith, without any reference to the interest of such owner or other person interested. The

property cannot be replevied or taken from the custody of the officer by any process, and the final judgment is declared a bar to all suits for the recovery of the property or its value or for any damages arising by reason of its seizure or detention, though if any claimant appears he may have his right of property tried in a summary manner.

Is it within the constitutional power of the legislature thus to authorize the destruction of property, without notice to the owner? It is true that in this case the plaintiffs in error did have knowledge of the proceeding, appeared and had a summary hearing of their claim of property, but the question of constitutional power does not depend upon what was done in the particular case but upon what the statute authorized to be done. Due process of law in the regular course of judicial proceedings requires notice to the defendant before he or his property can be condemned, as a matter of right and not of favor, and a law which purports to authorize condemnation without notice confers no authority and is no justification for a judgment against him, even though, as a matter of fact, it may happen that he had knowledge of the proceeding. In *Security Trust and Safety Vault Co.* v. *Lexington,* 203 U. S. 323, the court said: "If the statute did not provide for a notice in any form, it is not material that as a matter of grace or favor notice may have been given of the proposed assessment. It is not what notice uncalled for by the statute the tax-payer may have received in a particular case that is material, but the question is whether any notice is provided for by the statute.—*Stuart* v. *Palmer,* 74 N. Y. 183." In the case cited a statute purported to authorize an assessment upon the lands benefited of the cost of a local improvement but did not provide for notice to the owner. The court said: "It is not enough that the owners may by chance have notice or they may as a matter of favor have a hearing. The law must require notice to them and give them the right to a hearing and an opportunity to be heard. * * * The constitutional

validity of law is to be tested, not by what has been done under it but by what may by its authority be done." The doctrine thus announced has been followed in many other cases. *Coe* v. *Armour Fertilizer Works,* 237 U. S. 413; *Central of Georgia Railway Co.* v. *Wright,* 207 id. 127; *Roller* v. *Holly,* 176 id. 398.

A summary hearing, of which no notice is required to be given to a person whose rights are affected, and a judgment upon such hearing, do not constitute due process of law. Such a judgment is not binding upon the party against whom it is rendered and confers no rights against him or his property. The judgment of the court provided for by the Search and Seizure act, ordering the forfeiture and destruction of the intoxicating liquor and of all the property seized with it, was ineffectual as a judicial condemnation of the property of the plaintiffs in error Siemon, the Siebold-Schaeffer Company and Grace. The question presented is therefore the same as if the statute, instead of requiring the property to be brought before the judge, had authorized its destruction by the officer seizing it, if it were employed in violating the law. Could the legislature authorize the destruction of the property without a judicial proceeding?

There are cases in which the summary abatement of nuisances by executive officers without a judicial condemnation, and the destruction of articles used in their maintenance, may be authorized by the legislature. "Where the condition of a thing is such that it is imminently dangerous to the safety or offensive to the morals of the community, and is incapable of being put to any lawful use by the owner, it may be treated as a nuisance *per se.* Actual physical destruction is in such cases not only legitimate but sometimes the only legitimate course to be pursued. Rotten or decayed food or meat, infected bedding or clothing, mad dogs, animals affected with contagious diseases, obscene publications, counterfeit coin and imminently dangerous structures are the most conspicuous instances of nuisances *per se.*"

291—9

(Freund on Police Power, 520.) Cases of this character in which the power of summary abatement was sustained are *North American Cold Storage Co.* v. *City of Chicago,* 211 U. S. 306, *Miller* v. *Horton,* 152 Mass. 540, *New Orleans* v. *Charouleau,* 121 La. 890, *Durand* v. *Dyson,* 271 Ill. 382, *Sings* v. *City of Joliet,* 237 id. 300, *Frost* v. *People,* 193 id. 635, and *King* v. *Davenport,* 98 id. 305. The right of abatement in such cases is limited to nuisances *per se,* or to cases of imminent danger to the public health or safety, or to articles dangerous to the public welfare the possession of which is prohibited by law, and the abatement must be limited to the necessity of the case and no wanton or unnecessary destruction must be occasioned. "The power of summary abatement does not extend to property in itself harmless and which may be lawfully used but which is actually put to unlawful use or is otherwise kept in a condition contrary to law. * * * The unlawful use may, however, be punished, and the punishment may include a forfeiture of the property used to commit the unlawful act. * * * Such forfeiture is not an exercise of the police power but of the judicial power,—that is, the taking of the property does not strictly subserve the public welfare but is intended as punishment for an unlawful act. Hence, forfeiture requires judicial proceedings, either personal notice to the owner or at least a proceeding *in rem,* with notice by publication." (Freund on Police Power, secs. 525, 526.)

In *Darst* v. *People,* 51 Ill. 286, it was held that an ordinance declaring all intoxicating liquors kept in the town for the purpose of being sold or given away as a beverage, to be drunk in the town, a nuisance, and directing the police officers to abate the nuisance by removing the liquor beyond the town limits, did not authorize the officers to seize and carry away intoxicating liquors without first having the question of violation of the ordinance judicially determined.

In *Baldwin* v. *Smith,* 82 Ill. 162, a municipal ordinance provided that upon the revocation of a dram-shop license

the town constable should immediately close up the grocery of the licensee, but the licensee recovered a judgment against the constable and others for taking possession of his grocery, which was affirmed, the court saying that the saloon must be adjudged a nuisance before it could be abated. There must first be legal proceedings.

In *Hey Sing Ieck* v. *Anderson,* 57 Cal. 251, an owner of boats and nets lent them to a Chinese fisherman, who used them in violation of a statute which provided that all nets, seines, fishing tackle, boats or other implements used in catching or taking fish in violation of the statute should be forfeited, or might be seized by a peace officer of the county and destroyed or sold at public auction, upon notice posted in the county for five days. The court said: "But the statute under consideration contained no provision whatever for determining whether the property was liable to condemnation for the forfeiture denounced against it for the criminal acts of those who had it in their possession. It merely authorized a peace officer to seize the property without warrant or process, to condemn it without proof or the observance of any judicial forms, and to destroy it without notice of any kind, or sell it upon notice posted anywhere in the county for five days. Such an enactment cannot be harmonized with those constitutional guaranties which are supposed to secure everyone within the State in his rights of liberty and property."

In *State* v. *Robbins,* 124 Ind. 308, it is said: "Unless, therefore, articles seized are of such a character that the law will not recognize them as property, entitled, as such, to its protection under any circumstances, they cannot be summarily destroyed without affording the owner an opportunity to be heard upon the subject of their lawful use and to show whether or not the articles are intrinsically useful or valuable for any other purpose than gambling, or whether their only recognized value and customary use is as implements for gaming."

The case of *Edson* v. *Crangle,* 62 Ohio St. 49, was an action against an officer for the possession of nets used in fishing. The court held the statute authorizing the confiscation of the property by the officers to be unconstitutional, saying: "While the seizure may be made in the first instance by an officer of the law, doing no unnecessary damage, the confiscation must be made by the judgment of a court having jurisdiction of the subject matter. This section gives the right of confiscation but fails to provide a legal proceeding by which the confiscation may be adjudged, and, there being no other statute providing a proceeding in such cases, it attempts to take and sell private property and place the proceeds in the public treasury without any process of law. * * * Proper legal proceedings are always necessary to adjudge a forfeiture or confiscation, and to permit officers or private persons to seize, sell or appropriate property without legal proceedings, under a claim of confiscation, would be inconsistent with the principles of constitutional government and would soon lead to fraud, corruption, oppression and extortion."

A statute of the State of Nebraska provided that all guns, ammunition, dogs, blinds, decoys and fishing tackle in actual use by any person while hunting or fishing without the license required by the act should be forfeited to the State, and made it the duty of every officer charged with the enforcement of the act to seize, sell or dispose of the same in the manner provided for the sale or disposition of property on execution and to pay over the proceeds thereof to the county treasurer for use of the school fund. Three persons were hunting in violation of the Game law, using shot-guns belonging to one of the hunters. A deputy game-warden seized the guns and the owner brought an action of replevin for them and recovered a judgment, which the Supreme Court affirmed in *McConnell* v. *McKillip,* 71 Neb. 712. The court said: "The legislature has not declared a gun to be a public nuisance and has not ordered

its destruction as an abatement of the same. The seizure of the property provided for by this section is evidently intended not only to put it out of the power of the offending person to carry on the destruction of game by depriving him of the implement of destruction, but also to operate as a penalty or punishment for an unlawful act committed by him. It is of the nature of a common law forfeiture of goods upon conviction of a crime. * * * There is a clear and marked distinction between that species of property which can only be used for an illegal purpose, and which, therefore, may be declared a nuisance and summarily abated, and that which is innocent in its ordinary and proper use and which only becomes illegal when used for an unlawful purpose. We know of no principle of law which justifies the seizure of property innocent in itself, its forfeiture, and the transfer of the right of property in the same from one person to another as a punishment for crime, without the right of a hearing upon the guilt or innocence of the person charged before the forfeiture takes effect. If the property seized by a gamekeeper or warden were a public nuisance, such as provided for in section 1, he had the right, under the duties of his office at common law, to abate the same without judicial process or proceeding, and the great weight of authority is to the effect that such common law rights have not been abrogated or set aside by the provisions of the constitution. But if the property is of such a nature that, though innocent in itself and susceptible of a beneficial use, it has been perverted to an unlawful use and is subject to forfeiture to the State as a penalty, no person has a right to deprive the owner of his property summarily, without affording an opportunity for a hearing and without due process of law."

In *Lawton* v. *Steele,* 119 N. Y. 226, a statute of the State declared all nets set in certain public waters in violation of any law enacted for the protection of fish to be a public nuisance and provided that they might be abated

and summarily destroyed by any person, and that it should be the duty of every game constable to seize, remove and forthwith destroy the same, and that no action for damages should lie against any person on account of such seizure and destruction. The Supreme Court of New York held this section to be constitutional. In the course of the opinion the court said: "The inquiry in the present case comes to this: Whether the destruction of the nets set in violation of law, authorized and required by the act of 1883, is simply a proper, reasonable and necessary regulation for the abatement of the nuisance or transcends that purpose and is to be regarded as an imposition and infliction of a forfeiture of the owner's right of property in the nets in the nature of punishment. We regard the case as very near the border line, but we think the legislation may be fairly sustained upon the ground that the destruction of nets so placed is a reasonable incident of the power of the abatement of the nuisance. The owner of the nets is deprived of his property, but not as the direct object of the law but as incident to the abatement of the nuisance. * * * But the general rule undoubtedly is that the abatement must be limited by necessity, and no wanton or unnecessary injury must be committed. (3 Blackstone's Com. p. 6, note.) It is conceivable that nets illegally set could, with the use of care, be removed without destroying them, but in view of their position, the difficulty attending their removal, the liability to injury in the process, their comparatively small value, we think the legislature could adjudge their destruction as a reasonable means of abating the nuisance."

None of the reasons mentioned by the court apply to the present case. The destruction of the automobile is no more a necessary regulation for the abatement of the nuisance than the destruction of a house used for the sale of intoxicating liquors contrary to law or of a house of ill-fame would be necessary to abate that nuisance, and the court expressly states that the tearing down of a building so kept

would not be justified as the exercise of the power of summary abatement and that a statute authorizing it would add nothing to the justification. The only object the destruction could have would be the punishment of the owner or the prevention of the future unlawful use of the automobile, and the court says that the legislature could not decree the destruction or forfeiture of property for these purposes. The controlling argument seems to have been the comparatively small value, but this argument has no application in this case. The value of the property affected by the Search and Seizure act cannot be assumed to be "comparatively small."

The judgment of the Supreme Court of New York was affirmed by the Supreme Court of the United States, (*Lawton* v. *Steele,* 152 U. S. 133,) the court saying: "In this case there can be no doubt of the right of the legislature to authorize judicial proceedings to be taken for the condemnation of the nets in question and their sale or destruction by process of law. Congress has assumed this power in a large number of cases by authorizing the condemnation of property which has been made use of for the purpose of defrauding the revenue. Examples of this are vessels illegally registered or owned or employed in smuggling or other illegal traffic, distilleries or breweries illegally carried on or operated, and buildings standing upon or near the boundary line between the United States and another country and used as depots for smuggling goods. In all these cases, however, the forfeiture was decreed by judicial proceeding. But where the property is of little value and its use for the illegal purpose is clear, the legislature may declare it to be a nuisance and subject to summary abatement. Instances of this are the power to kill diseased cattle, to pull down houses in the path of conflagrations, destruction of decayed fruit or fish or unwholesome meats, of infected clothing, obscene books or pictures, or instruments which can only be used for illegal purposes. While the legislature

has no right arbitrarily to declare that to be a nuisance which is clearly not so, a good deal must be left to its discretion in that regard, and if the object to be accomplished is conducive to the public interests it may exercise a large liberty of choice in the means employed."

The argument of the small value of the property involved does not affect the principle of constitutional power or tend to show the summary destruction of the property to be reasonably essential to the suppression of the illegal use, as was pointed out by Chief Justice Fuller in his dissenting opinion, in which two of the associate justices concurred. None of the instances of summary abatement which the court mentions rest in any degree on the fact that the property is of little value. In the present case it does not appear that the property is of little value, and the decision of the Supreme Court of the United States that where the property is of little value the legislature may declare it a nuisance and subject to summary abatement, if it might otherwise be entitled to weight, is not applicable. Under this law a man's automobile may be stolen from his garage, loaded with intoxicating liquor stolen from his cellar, where it is lawfully kept, driven on the public highway of the State in violation of law, seized by an officer, taken, with the thief who stole it, before a judge, condemned and destroyed with no notice to the owner, who may have no knowledge of the occurrence until long after his property has been destroyed.

Our conclusion is that the provision of the Search and Seizure act for the destruction of the intoxicating liquor and other property seized, under the order of the court, without providing that notice shall be given to the owner or persons interested in the property, does not afford due process of law and is a violation of the constitution. The statute having provided no lawful procedure for condemning the property to destruction, the court was without authority to make any order for that purpose.

The judgment will be affirmed as to the plaintiff in error Harvey Marquis and reversed as to the other plaintiffs in error, and the cause remanded to the county court of McHenry county.          *Reversed in part and remanded.*

Mr. JUSTICE DUNCAN, dissenting:

I concur in that part of the decision of the majority of the court that deals with and holds that the provisions of the Search and Seizure act providing for the seizure and destruction of intoxicating liquors and the property used in their transportation are void because in violation of the constitution. I cannot concur with that portion of the decision which apparently recognizes the validity of the provisions of the statute which provide, in substance, that intoxicating liquors cannot be legally transported in this State and delivered to any person or consignee for any use or purpose other than that named in the act. The act clearly provides and intends, when considered in its entirety, that intoxicating liquors can only be lawfully transported in this State when the same are to be sold or used for medicinal, sacramental, chemical, mechanical or manufacturing purposes. Section 3 of the act specifically so provides. The only exception or provision in that section throwing any doubt upon this interpretation is the proviso in that section, that nothing in the act shall be construed to forbid "any consignee from transporting his vessel or package of intoxicating liquor from the nearest place of delivery to the nearest carrier to the place where such liquor is to be used." All semblance of such doubt is removed by section 7 of the act, which specifically provides that no carrier shall within prohibition territory turn over or deliver any intoxicating liquor, under any circumstances whatever, to any consignee whomsoever, except when consigned, first, to a druggist; second, wine to any *bona fide* church or religious society for sacramental purposes; third, alcohol to any person for chemical, mechanical or manufacturing purposes. Section 9

of the act permits intoxicating liquor to be sold by a druggist and delivered to a sick person on a written prescription of a physician who has personally examined such sick person and shall therein state that such person is in immediate need of the kind and amount of liquor prescribed, and shall also state definitely the place where such liquor is to be used or administered. Under section 13 of the act any consignee, purchaser or person to whom any intoxicating liquor shall be delivered under the provisions of the act may receive a written permit from the sheriff to remove such liquor to another designated place, and the giving of such permit is wholly within the discretion of such officer.

No intoxicating liquors except those that are held and to be disposed of and used for the purposes aforesaid are permitted to be transported under this act, within prohibition territory, in this State, by any person, as principal, clerk or servant. The whole State is declared to be prohibition territory by the decision in this case. "Intoxicating liquor" is defined by the act to include all distilled, spirituous, vinous, fermented or malt liquor which contains more than one-half of one per cent, by volume, of alcohol, and all alcoholic liquids, compounds and preparations, whether proprietary, patented, or not, which are potable and which are capable of or suitable for being used as a beverage. It is thus clearly made to appear that no legal owner of any cider, wine or beer containing more than one-half of one per cent of alcohol, whether heretofore legally made by himself from his own apples, grapes or other products grown by himself, or whether heretofore legally purchased and stored in his cellar or home for his own and his family's private home use as a beverage, is permitted by this act to transport and remove the same, either by himself or by another, to another place or home to be there used by himself and family as a beverage. It also prohibits all possessors and owners of all other intoxicants whatever that were heretofore legally bought and stored by them and for their own private

use as a beverage, from in any way transporting such liquors to any other place or home they may desire or have necessity to remove them in order that they may use them for such purpose.

It ought not to require any learned discussion or citation of authorities to convince any court or lawyer that such a restriction upon the use or upon the transportation of property for private use is an invasion of the constitutional right of every citizen in this State. No court has ever declared, so far as I know, that a man has not the constitutional right to use as a beverage intoxicating liquor legally purchased and stored by him for such purpose, when used in moderation. He is denied that right when he is prohibited by statute from removing that liquor to another home or repository when necessity compels him to remove it in order that he may so use it. Such a denial is an invasion of his right of property. The decision of the court in this case recognizes the right of property in the owner of the beer mentioned in this case and holds that it cannot be destroyed under this act but must be restored to such owner, yet in the same decision the court sustains the act which provides that it cannot be legally transported to or by the owner, to be used by himself as a beverage. It is his property and must be restored to him, but he cannot move and use it for any purpose except as provided by the act. This amounts virtually to confiscation when we come to consider the proposition that beer's recognized use in this country is almost exclusively as a beverage.

I believe that this statute is also entirely void as to the provisions in reference to the transportation of intoxicating liquor. It is clear that it is void in the particular already named, wherein it prohibits an owner from transporting such liquor to another home or place for his own use when necessity compels him to remove it to secure him such use. The general rule is that a statute void in part is void as a whole, if all the provisions of the act are so interwoven as

to be incapable of distinct separation or are of such a character that it cannot be said that the legislature intended that the valid parts shall be enforced if the other parts fail. (1 Lewis' Sutherland on Stat. Const.—2d ed.—sec. 270.) The rule is more stringent in regard to criminal statutes. "A law void as to certain property [intoxicating liquors] already possessed at the passage of the law, but which would be valid if confined to such property subsequently acquired, is wholly void, being general, so as to include both in penal destruction of value." (Ibid. sec. 299.) I am satisfied that the legislature would never have passed the Search and Seizure act with reference to the transportation of intoxicating liquors if it had known that so much of it was void as has been declared so by the opinion of the court in this case and as indicated in this dissenting opinion.

It necessarily follows from the foregoing discussion that it is my judgment that plaintiff in error Marquis was not proven guilty of any offense against the laws of this State. He was simply charged with unlawfully transporting intoxicating liquors containing more than one-half of one per cent alcohol in a certain auto truck over certain public highways in the county of McHenry, within prohibition territory, etc. It was neither charged nor proved in the trial the purpose for which the liquors were to be transported and used. If they were to be used by the consignee and legal owner for his own private use as a beverage, such transportation and use were legal although prohibited by said act. Such an owner for such a use had a right to transport such liquors, either by himself or another as his agent, and the agent would be no more guilty of an offense against the law than his principal. If the act of transportation had been for the unlawful purpose of selling the intoxicating liquor and the act prohibiting its transportation for sale could be sustained as valid on that ground, the court could not then legally assume, without proof, that the transportation was for such unlawful purpose merely because of

the fact that Marquis was purposely avoiding certain towns
and counties where he might be arrested under this act. The
act provides that it is unlawful for the owner to transport
such liquor for his own use, which rendered that much of
the act void, but Marquis was as likely to be arrested for
the violation of that part of the law as any other portion of
it that might be held valid. So in any event, whether the
act be only void in part or void *in toto,* he cannot be properly
convicted under the evidence. When a person's act and con-
duct are such as to lead to two reasonable conclusions,—one
that he is evading certain towns and counties because he is
likely to be arrested for doing a lawful act prohibited by an
invalid part of a statute, and the other that he is doing an
unlawful act prohibited by the same statute,—he is entitled
to the presumption that he was doing the lawful act and
not the unlawful act. Marquis did not have to intention-
ally take all chances of an unlawful arrest to be entitled
to his legal presumption of innocence. So in any view of
the case I do not think the State made out any case against
him. The judgment as to him should be reversed.

For the foregoing reasons I respectfully dissent from
that part of the decision of the court sustaining the judg-
ment of conviction as to plaintiff in error Marquis.

Mr. JUSTICE FARMER, also dissenting:

I agree with that part of the opinion of the court which
holds that the provisions of the act authorizing the destruc-
tion of property are unconstitutional and void, and I agree
with the dissenting opinion of Mr. Justice Duncan that those
provisions are so interwoven with the other provisions of
the act and are so material a part of it that it cannot be
presumed the legislature intended that if those provisions
were void the remainder of the act should be retained and
enforced. It is my view, therefore, that the entire act
should be held unconstitutional.