(No. 30522.—)

## W. A. Cox, Appellant, *vs.* RAY Cox *et al.,* Appellees.

*Opinion filed May 20, 1948.*

L. LELAND HAMILTON, and CHARLES DURFEE, both of Golconda, for appellant.

CLYDE E. WHITESIDE, of Harrisburg, and CLARENCE E. SOWARD, of Springfield, for appellees.

Per CURIAM: The appellant, W. A. Cox, who was plaintiff in the trial court, appeals from orders of the circuit court of Pope County sustaining the motion of the defendants to strike portions of the plaintiff's replication that challenge the constitutionality of certain provisions of the Fish Code of 1941, from the order of said court denying the plaintiff's motions for new trial and for judgment notwithstanding the verdict, and from the judgment of the court dismissing the suit and assessing costs against the plaintiff. The constitutionality of a statute of this State being involved, the appeal comes directly to this court.

The plaintiff filed a suit against the defendants for damages arising out of the destruction of certain fish nets owned by the plaintiff. The complaint, as amended, alleged that the plaintiff had these nets stored in a small building

on the bank of the Ohio River at Golconda, Illinois, on December 3, 1941, and that the defendants on said day, without notice and without the plaintiff's consent and over his protest, seized and took said nets and destroyed them, to the damage of the plaintiff in the sum of $3000. The defendants answered the amended complaint and admitted plaintiff's ownership of the nets but denied that the nets had any value and denied that they seized and took the nets from the possession of the plaintiff without his consent and over his protest. In their answer they also justified their action in taking the nets on the ground that they were deputy game wardens of the Department of Conservation and that they were acting under the direction of the Director of that department, and that as such employees they had been instructed to destroy every device, including nets possessed or used in violation of the laws of the State of Illinois. They, by their answer, alleged that the nets taken were illegal and were illegally possessed by the plaintiff in that the mesh of said nets was less than three inches diagonally stretched. They likewise alleged that the nets were a public nuisance and were subject to seizure in confiscation.

To the amended answer the plaintiff replied disclaiming knowledge as to the official capacity of the defendants and disclaiming knowledge as to any instructions which might have been given the defendants by the Director of the Department of Conservation with reference to the confiscation and destruction of nets which were illegally possessed. The plaintiff also alleged in his reply that the defendants were not justified in seizing and destroying said nets under the provisions of section 15 of the Fish Code, (Ill. Rev. Stat. 1941, chap. 56, par. 109,) for the reason that said section was void and unconstitutional in that it authorized the taking of property without due process of law. The plaintiff also in his reply alleged that said section had no application to the nets destroyed for the

reason that the nets were never used or intended to be used in any water of the State of Illinois, but that on the contrary were wholly used and intended to be used in the water of the Ohio River beyond the territorial jurisdiction of the State of Illinois. The defendants filed a motion to strike from this reply the portion thereof that challenged the constitutionality of said section 15, which motion was sustained.

The cause then went to trial before a jury on the pleadings with the constitutional question stricken. The jury returned a verdict in favor of the defendants and, after motions for new trial and for judgment notwithstanding the verdict were denied, judgment was entered against the plaintiff and this appeal followed.

From the evidence it appears that the plaintiff was a commercial fisherman and that on December 3, 1941, he owned 84 fish nets, which were stored in a building standing on the bank of the Ohio River at Golconda, Illinois; it also appears that the defendants were deputy game wardens and employees of the Department of Conservation of the State of Illinois and that on said date the defendants called on the plaintiff and inquired of him if he had any nets known as "Fiddler Nets." The defendants inspected the fishing equipment of the plaintiff and found these 84 nets, which were not then in use, and measured some of them and told the plaintiff that the mesh measurement was less than three inches, contrary to the statute, and that they would have to confiscate these nets and take them from the plaintiff. It also appears that when the plaintiff was informed of this, he became greatly disturbed and protested to the defendants and that he stated, "Well, if you are going to take them, burn them right here rather than take them down the river where someone else can get them." After that the defendants piled the 84 nets on the river bank and burned them. There is very little conflict in the testimony and it appears that there are really

only two conflicts evidentiary in the record, namely with reference to the size of the mesh and with reference to the question of the plaintiff's consenting to the taking and destruction of the nets by the defendants.

The plaintiff contends that section 15 of the Fish Code as it existed in 1941, is unconstitutional in that it authorizes the confiscation and disposal of private property without notice. He contends further that the court erred in instructing the jury and that the court erred in denying his motions for judgment notwithstanding the verdict and for a new trial, and that the verdict of the jury is contrary to the manifest weight of the evidence.

We shall first consider the question of the constitutionality of section 15. This section, as it was in force at the time this cause of action arose, provided as follows:

"Each and every device, including seines, nets, traps or any other devices, possessed or used or operated, or attempted to be used or operated by any person in taking any fish, frogs, turtles or mussels, contrary to any of the provisions of this Act, is hereby declared to be a public nuisance and subject to seizure and confiscation by any police officer or employee of the Department, and shall be disposed of as the Director of the Department shall direct.

"No person shall possess any device, the use of which by this Act is wholly prohibited.

"Upon the seizure of any other device, because of the illegal use of the same, the officer or employee of the Department making such seizure shall forthwith cause a complaint to be filed before a Justice of the Peace, Police Magistrate, or other court of competent jurisdiction and a summons to be issued requiring the owner or person in possession of such device to appear in court and show cause why the device seized should not be forfeited to the State. In case of failure to serve such summons upon the owner of such device, or person in possession of the

same at the time of the seizure thereof, notice of the proceeding before the Justice of the Peace, Police Magistrate, or other court, shall be given as required by the statutes of the State in cases of attachment. Upon the return of the summons duly served or upon posting or publication of notice made as hereinbefore provided, the court shall proceed to determine the question of the illegality of the use of the device seized and upon judgment being entered to the effect that such device was illegally used, an order shall be entered providing for the forfeiture of the device to the State, provided, that the owner of such property may have a jury determine the illegality of its use, and shall have the right of an appeal, or review of a court of appellate jurisdiction."

It is to be noted that in this case there was no evidence that the nets were ever used by the plaintiff. The defendants' sole contention is that the nets involved in this case were illegally possessed and, therefore, their acts in seizing the same and destroying them were justified under the provisions of section 15 of the statute even though no notice or opportunity for hearing was given unto the plaintiff. Section 23 of the Fish Code of 1941, in subparagraph (t) provides that it shall be unlawful "To use any hoope net or fyke net having a mesh less than three (3) inches diagonal stretched measurement * * *." The defendants contend, therefore, that the nets which they destroyed were unlawful and illegal because the size of the mesh of the nets was less than three inches. Section 15 provides, "No person shall possess any device, the use of which by this act is wholly prohibited." The defendants contend that, inasmuch as the use of the nets involved in this case was wholly prohibited, therefore it was illegal for the plaintiff to possess the same.

The defendants rely heavily upon the case of *Lawton* v. *Steele,* 152 U.S. 133, in which case the Supreme Court of the United States, in a divided decision, upheld the

constitutionality of a New York statute authorizing the summary destruction of fish nets maintained in the waters of New York State. Prior to the decision of the Supreme Court of the United States, this case was in the Court of Appeals of New York, and the statute was there held constitutional, 119 N. Y. 226. The New York court in that decision said: "The inquiry in the present case comes to this: Whether the destruction of the nets set in violation of law, authorized and required by the act of 1883, is simply a proper, reasonable and necessary regulation for the abatement of the nuisance or transcends that purpose and is to be regarded as an imposition and infliction of a forfeiture of the owner's right of property in the nets in the nature of punishment. We regard the case as very near the border line, but we think the legislation may be fairly sustained upon the ground that the destruction of nets so placed is a reasonable incident of the power of the abatement of the nuisance. The owner of the nets is deprived of his property, but not as the direct object of the law but as incident to the abatement of the nuisance." That court further stated, "But the general rule undoubtedly is that the abatement must be limited by necessity, and no wanton or unnecessary injury must be committed." Further, "It is conceivable that nets illegally set could, with the use of care, be removed without destroying them, but in view of their position, the difficulty attending their removal, the liability to injury in the process, their comparatively small value, we think the legislature could adjudge their destruction as a reasonable means of abating the nuisance." When this case was reviewed in the Supreme Court of the United States, 152 U.S. 133, the contention was likewise made that the legislature could not authorize the summary destruction of property without judicial proceedings for the condemnation of the same. The United States Supreme Court in the majority opinion stated, "Congress has assumed this power in a large num-

ber of cases by authorizing the condemnation of property which has been made use of for the purpose of defrauding the revenue. Examples of this are vessels illegally registered or owned or employed in smuggling or other illegal traffic, distilleries or breweries illegally carried on or operated, and buildings standing upon or near the boundary line between the United States and another country and used as depots for smuggling goods. In all these cases, however, the forfeiture was decreed by judicial proceeding. But where the property is of little value and its use for the illegal purpose is clear, the legislature may declare it to be a nuisance and subject to summary abatement."

In *Lawton* v. *Steele* it was further said by the Supreme Court of the United States, "It is not easy to draw the line between cases where the property illegally used may be destroyed summarily and where judicial proceedings are necessary for its condemnation. If the property were of great value as, for instance, if it were a vessel employed for smuggling or other illegal purposes, it would be putting a dangerous power in the hands of a customs officer to permit him to sell or destroy it as a public nuisance, and the owner would have good reason to complain of said act as depriving him of his property without due process of law. But where the property is of trifling value, and its destruction is necessary to effect the object of a certain statute, we think it within the power of the legislature to order its summary abatement." The court also in its opinion pointed out that the nets there involved were valued at $15 each and that the costs of condemning them by judicial proceedings would largely exceed the value of the nets and that the State would in many cases be deterred from executing the law by reason of the expense. It was also pointed out that the nets were difficult to remove from the water and would probably be damaged in such removal. It is apparent from reading that opinion that the court was impressed by the fact that the nets

were of small value, that they were in use at the time of the seizure and that it would be difficult to remove them from the water without damaging them.

In the case of *People* v. *Marquis*, 291 Ill. 121, this court passed upon the constitutionality of a provision of the Search and Seizure Act authorizing the destruction, by order of court, of intoxicating liquors and the vehicles used in transporting the same, without notice to the owner of such property but only to the person in whose possession the property was found. In that case it was contended that the intoxicating liquors and the vehicles used to transport the same were a public nuisance and that under the statute the same could be destroyed without giving notice to the owner of the vehicle or to the owner of the liquor. In that case it was contended that the liquor and the vehicle which was used to transport the same were so dangerous to the safety or offensive to the morals of the community that the only logical course to be followed was the destruction of the same. We held that section of the statute unconstitutional on the ground that the only object of destruction would be the punishment of the owner or the prevention of the future unlawful use of the automobile. *Lawton* v. *Steele*, 152 U.S. 133, was cited as one of the cases authorizing the destruction of the automobile and the liquor, and we carefully reviewed that opinion in the *Marquis case,* and, in referring to *Lawton* v. *Steele,* at page 135, stated, "The controlling argument seems to have been the comparatively small value, but this argument has no application in this case." At page 136 we again stated, "The argument of the small value of the property involved does not affect the principle of constitutional power or tend to show the summary destruction of the property to be reasonably essential to the suppression of the illegal use, `* * *`." We further stated, "In the present case it does not appear that the property is of little value, and the decision of the Supreme Court of the

United States that where the property is of little value the legislature may declare it a nuisance and subject to summary abatement, if it might otherwise be entitled to weight, is not applicable." We held that the statute did not provide a lawful procedure for condemning the property and, therefore, the court was without authority to make any order for the destruction of the same.

In the case at bar it affirmatively appears that the nets were of considerable value and it manifestly appears that they were merely in the possession of the plaintiff and were not being used for any illegal purpose at the time of confiscation. If the confiscation and summary destruction of these nets were approved by this court it would be possible for conservation officers to seize and destroy nets of this sort throughout the State of Illinois, which nets were never used or intended to be used in the State of Illinois. We believe that such action would be entirely illegal and not within the police power of the State.

It is, therefore, our conclusion that the trial court erred in striking that portion of the plaintiff's replication challenging the constitutionality of section 15 of the Fish Code of 1941. In view of the fact that instruction No. 6, given by the court at the request of the defendants, instructed the jury that if it believed from the evidence that the defendants found fish nets in the possession of the plaintiff that were contrary to law and that the defendants were employees of the Department of Conservation acting under the directions of the Director of said department, the jury should find the defendants not guilty, it was impossible for the jury to properly determine the issues in this case.

We shall not further discuss the weight of the testimony or the contentions made by the parties other than the contention made by defendants that the destruction of the nets was with the permission and acquiescence of the plaintiff. We have carefully reviewed the testimony

on this aspect of the case and we do not believe that the manifest weight of the evidence indicates that these nets were destroyed with the consent and acquiescence of the plaintiff, and, therefore, a new trial must be had in this cause.

The judgment of the circuit court of Pope County is reversed and the cause remanded for further proceedings in accordance with this opinion.

*Reversed and remanded.*